## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

MICHELE NELSON, on behalf of
herself and others similarly situated,

Plaintiff,

v.

CAPITAL VISION SERVICES, LLC,

Defendant.

Case No.: 5:26-cv-10275-JEL-KGA

Judge Judith E. Levy

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant Capital Vision Services, LLC, hereby moves to dismiss the Complaint filed by Plaintiff Michele Nelson in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(c). As explained in the memorandum in support, the TCPA's private action for the "do not call" claims Plaintiff asserts is explicitly limited to persons who receive "more than one telephone call." Because Plaintiff did not receive any telephone calls, she fails to state a claim.

Under Local Rule 7.1, the undersigned certifies that counsel for Defendant made reasonable and timely efforts to confer with counsel for Plaintiff regarding the grounds for this Motion and whether Plaintiff would concur with the relief sought herein prior to filing same, including a conferral by telephone on April 17, 2026. Plaintiff's counsel stated that Plaintiff opposes the Motion.

DATED: April 22, 2026

/s/ Ryan D. Watstein
Ryan D. Watstein
James M. Ruley
WATSTEIN TEREPKA, LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
(404) 782-0695
ryan@wtlaw.com
jruley@wtlaw.com

Max A. Aidenbaum (P78793)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3093
maidenbaum@dickinsonwright.com

*Counsel for Defendant*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

MICHELE NELSON, on behalf of
herself and others similarly situated,

    Plaintiff,

  v.

CAPITAL VISION SERVICES, LLC,

    Defendant.

Case No.: 5:26-cv-10275-JEL-KGA

Judge Judith E. Levy

**BRIEF IN SUPPORT**
**OF DEFENDANT'S MOTION TO DISMISS**

# **TABLE OF CONTENTS**

I.    INTRODUCTION AND BACKGROUND........................................................1

II.   LEGAL STANDARD.................................................................................4

III.  ARGUMENT ............................................................................................5

     a.    Plaintiff's Section 227(c) Claims Fail Because She Didn't Receive Any "Telephone Calls," as the Statute Requires ....................... **5**

          i.     Section 227(c) Does Not Provide a Private Action for Text Messages....................................................................................5

          ii.    Any FCC Ruling to the Contrary is Invalid.............................12

          iii.   The Courts Reaching the Incorrect Conclusion Rely on the Wrong Statutory Term and/or Predate McLaughlin.................17

IV.  CONCLUSION.........................................................................................18

# CONCISE STATEMENT OF ISSUE PRESENTED

Whether Plaintiff has adequately pled a claim for relief against Capital Vision

Services, LLC under the TCPA's private action, 47 U.S.C. § 227(c)(5).

Capital Vision Services, LLC answers: No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025)

- *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)

- *Stockdale v. Skymount Prop. Grp., LLC,* 2026 WL 591842 (N.D. Ohio Mar. 3, 2026);

- *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025)

- *Davis v. CVS Pharmacy, Inc.,* 797 F. Supp. 3d 1270 (N.D. Fla. 2025)

- *James v. Smarter Contact, et al.*, --- F. Supp. 3d ----, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026)

- *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759 (M.D. Fla. Oct. 24, 2025)

- *Radvansky v. 1-800-FLOWERS.COM*, 2026 WL 456919 (N.D. Ga. Feb. 17, 2026)

- *Richards v. Fashion Nova LLC*, 2026 WL 847568 (S.D. Ind. Mar. 26, 2026)

- *Richards v. Shein Distribution Corp.*, 2026 WL 847584 (S.D. Ind. Mar. 26, 2026)

- *Radvansky v. Kendo Holdings, Inc.*, Case No. 23-cv-00214 (N.D. Ga. Feb. 12, 2026)

ii

## I.      INTRODUCTION AND BACKGROUND

Defendant Capital Vision Services, LLC is a management services company that operates and supports a network of independent optometry practices in the United States. When Plaintiff Michele Nelson received a handful of text messages linked to myeyedoctor.com that included reminders about updating the recipient's eye prescription, she didn't respond "STOP." *Id*. ¶ 18 (ECF No. 1, PageID.3). She instead let the messages accrue and then filed this federal class action lawsuit seeking millions. *Id*. ¶ 27 (ECF No. 1, PageID.4-5). She asserts claims only under the Telephone Consumer Protection Act's Do-Not-Call ("DNC") provision, 47 U.S.C. § 227(c)(5). *See* Compl. ¶¶ 17, 55–63 (ECF No. 1, PageID.3, 7-9). That provision provides a private cause of action to persons who received "more than one telephone call" that is also a "telephone solicitation" within 12 months at a residential, as opposed to business, number. 47 U.S.C. § 227(a)(4), (c)(5).

The messages at issue here are altogether exempt from the TCPA because they are healthcare communications, not telephone solicitations, a separately defined term. But the Court need not decide that factual issue because Plaintiff's claim fails at the threshold for an even more fundamental reason: the TCPA's DNC provision only provides a private right of action for a person who has received "more than one *telephone call*" from the defendant. 47 U.S.C. § 227(c)(5) (emphasis added); *see also* Compl. ¶¶ 55–63 (*citing* 47 U.S.C. § 227(c)(5)) (ECF No. 1, PageID.7-9).

Plaintiff does not allege that Capital Vision placed any telephone call to her; she alleges only receiving text messages. *Id.* ¶ 17 (ECF No. 1, PageID.3). That is dispositive and requires dismissal.

Almost a dozen courts across the country, including the only district court in this Circuit to decide the issue, have properly recognized that "the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'" *Stockdale v. Skymount Prop. Grp., LLC,* 2026 WL 591842, at *2 (N.D. Ohio Mar. 3, 2026) (Gaughan, J.); *see also Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025) (granting motion to dismiss because "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages."); *Davis v. CVS Pharmacy, Inc.,* 797 F. Supp. 3d 1270, 1275 (N.D. Fla. 2025) (granting motion to dismiss § 227(c) claims because plaintiff only alleged receiving text messages, and "because text messages are not telephone calls, she has not stated a claim."); *James v. Smarter Contact, et al.*, --- F. Supp. 3d ---, 2026 WL 879244 (M.D. Fla. Mar. 31, 2026) (granting motion to dismiss "[b]ecause Section 227(c)(5) does not apply to text messages[.]"); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (granting motion to dismiss, finding "the statutory text here is clear, and a text message is not a 'telephone call.'"); *Radvansky v. 1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (same); *Richards v. Fashion Nova LLC*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026)

2

(same); *Richards v. Shein Distribution Corp.*, 2026 WL 847584, at \*5 (S.D. Ind. Mar. 26, 2026) (same); *Radvansky v. Kendo Holdings, Inc.*, Case No. 23-cv-00214 (N.D. Ga. Feb. 12, 2026) (same).

That conclusion follows from the statute's text, structure, and history, as well as from the Supreme Court's recent clarification that courts must independently determine a statute's meaning rather than defer to an agency's contrary view. Section 227(c)(5) creates a private right of action only for receipt of more than one "telephone call" and the ordinary meaning of that term at the time of enactment was fixed and did not encompass text messages (unlike a category term like "any communication," which is not fixed). The surrounding provisions of § 227 reinforce that reading, because Congress used broader language elsewhere when it wished to regulate additional forms of communication and later amended the statute to distinguish expressly between "call[s]" and "text message[s]."

Nor can any FCC interpretation alter that result. The Supreme Court has made clear that courts must exercise their own independent judgment in determining a statute's meaning and may not defer to an agency interpretation that expands the statute beyond its best reading. *See McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146, 157–59 (2025); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400–02 (2024). The agency may issue implementing regulations, but it cannot

3

enlarge the private cause of action Congress chose to create, and this Court must apply the statute as written.

Indeed, Congress authorized the FCC to regulate the broader category of "telephone solicitations," a term that includes "telephone call[s]" *and* "message[s]." But when Congress created a private right of action, it used narrower language, limiting private suits to persons who received "more than one telephone call." 47 U.S.C. §§ 227(a)(4), (c)(5). That is a commonplace legislative choice: Congress routinely authorizes broader regulatory enforcement than the private remedy it chooses to create.

This defect is dispositive of Plaintiff's claim, and the Complaint should be dismissed with prejudice.

## II.     LEGAL STANDARD

"A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim, if the facts alleged are insufficient to state a claim made, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561–64 (2007)). While a court must accept as true all well-pleaded factual allegations and construe them in the plaintiff's favor, it "need not . . . accept as true legal conclusions or unwarranted factual inferences." *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

### III.   ARGUMENT

#### a. Plaintiff's Section 227(c) Claims Fail Because She Didn't Receive Any "Telephone Calls," as the Statute Requires

##### i. Section 227(c) Does Not Provide a Private Action for Text Messages

The section of the TCPA at issue in this case creates a private right of action for "a person who has received more than one *telephone call* within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). Congress did not define "telephone call" in the TCPA, but in 1991, when the statute was enacted, the term was universally understood to mean voice-based communications, as anyone alive at that time could attest. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (courts interpret statutory terms according to their "ordinary, contemporary, common meaning").

Text messaging, as a technology, did not exist in 1991, and the first text message was not sent until December 1992. *See Blackstone*, 792 F. Supp. 3d at 899 ("[t]he world's very first text message [was] sent Dec. 3, 1992," and "was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.") (*quoting* Alex Fitzpatrick, How Text Messages Are Being Killed and Replaced, TIME (Dec. 3, 2014), *available at* https://time.com/3612277/text-message-history-future/) (last visited Apr. 15, 2026). When Congress enacted the TCPA in 1991, the ordinary meaning of the noun "call"—as opposed to the verb form not at issue but wrongly analyzed by several

5

courts going the other way[1]—was "'the act of calling on the telephone' and 'telephone' [was defined as] 'an instrument for reproducing *sounds* at a distance . . . one in which sound is converted into electrical impulses for transmission by wire." *Stockdale*, 2026 WL 591842, at *3 (*quoting Merriam-Webster New Collegiate Dictionary* (9th ed. 1990), *available at* https://archive.org/details/webstersninthne000merr/mode/2up (last visited Apr. 15, 2026)). "Thus, a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of "telephone call" from 1991." *James*, 2026 WL 879244, at *3 (*citing* The Random House Dictionary of the English Language 297, 1952 (2d ed. 1987), and Merriam-Webster's Collegiate Dictionary 162, 1211 (10th ed. 1993)); *see also Stockdale*, 2026 WL 591842, at *3 ("Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance."); *CVS Pharmacy*, 797 F. Supp. 3d at 1273 (Recognizing it is "[c]ertainly" the case that "no ordinary person would think of a text message as a '*telephone* call' . . . at the time of the provision's enactment.").

The Supreme Court has warned against judicial efforts to retroactively "modernize" the TCPA by stretching terms beyond their original meaning. In *Facebook v. Duguid*, the Court *unanimously* reversed an expansive interpretation of

---

[1] *See* discussion *infra* pp. 7–8.

the TCPA, holding that courts may not rewrite the statute to keep up with changing technology. The same logic applies here. 592 U.S. 395 (2021). If "telephone call" meant "text message," then any communication capable of being transmitted via the phone—emails, app alerts, social media notifications—could arguably fall within the statute. Congress chose not to go that far by using a term with a fixed contemporaneous meaning in Section 227(c)—instead of a *category term* like "all communications"[2]—which also contains other limitations on the private cause of action not present in other sections of the TCPA.

Numerous recent decisions, including the only decision from within this Circuit, confirm that conclusion and dismiss claims under § 227(c) based on text messages, finding that the statute does not apply to them. In *Stockdale*, former Chief Judge Gaughan of the Northern District of Ohio held that "the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages,'" and explained that the plain meaning of "telephone call" at the time Congress enacted the TCPA "could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance." 2026 WL 591842, at *2–4

---

[2] Another example of a category term is "vehicle." That would include gas cars and EVs, even if the latter didn't exist at the time of enactment of the relevant statute. Unlike a broad category term like vehicle, "telephone call" had a specific, limited meaning at the time of enactment—and continues to have that same meaning today, requiring transmission of sound.

(N.D. Ohio Mar. 3, 2026).[3] *See also Blackstone*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages."); *James*, 2026 WL 879244, at *3 (holding that a text message is not included in the ordinary public meaning of "telephone call" because it does not use a telephone to reproduce sounds at a distance); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("the statutory text here is clear, and a text message is not a 'telephone call.'"); *1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (granting a motion to dismiss and noting "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."); *Fashion Nova LLC*, 2026 WL 847568, at *2 ("A plain reading of § 227(c)(5) therefore supports Defendant's position that under § 227(c)(5), 'telephone call' does not mean text messages."); *Shein Distrib. Corp.*, 2026 WL 847584, at *5 (same); *Kendo Holdings, Inc.*, 23-cv-00214 (granting a motion for judgment on the pleadings, finding § 227(c)(5)'s "statutory text here is clear, and a text message is not a 'telephone call.'") (quotation omitted). "This conclusion—supported by the ordinary public meaning at

---

[3] *Stockdale* is now on appeal in the Sixth Circuit, and Capital Vision is contemporaneously filing a motion to stay this case pending resolution of the *Stockdale* appeal, which will be dispositive of this argument one way or the other. *See Stockdale v. Skymount Prop. Grp., LLC*, No. 26-3267 (6th Cir. docketed Apr. 2, 2026).

the time of the provision's enactment—is enough to end this case." *CVS Pharmacy*, 797 F. Supp. 3d at 1270.

As the *James* court noted, decisions concluding otherwise—that a text message can qualify as a "telephone call"—rest on a flawed statutory interpretation. 2026 WL 879244, at *3. Namely, they "improperly use[] definitions of the ***verb form*** of 'call[,]'" but in "Section 227(c)(5), "call" is used as ***a noun.***" *Id.* at *4 (citing *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 636 (S.D.N.Y. 2025) (emphasis added)). Those courts then "compound the error by neglecting to consider the modifying effect on 'call' from 'telephone' as understood in 1991." *James*, 2026 WL 879244, at *4. "[T]he modifying effect of "telephone" . . . . clarifies the understanding of the much broader "call[.]" *Id.* To illustrate, a judge can "call" (verb) their law clerk by yelling to the other room where she is sitting. But the only way to receive a "telephone call" (noun) from the law clerk is by answering a voice call from her. That is still true today, but it was even more so in 1991. No one said then, and no one says today, "Hey, I just sent you a telephone call, please read it when you can."

This reading is further confirmed by the statute's structure and Congress's subsequent amendments. In Section 227(a)(4), for instance, Congress used the phrase "telephone call or message," but in Section 227(c)(5) it used only "telephone call," signaling that it intended to exclude other forms of communication, such as

text messages, from the private right of action. *See CVS Pharmacy*, 797 F. Supp. 3d at 1274 ("courts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters") (cleaned up). Likewise, Congress amended § 227(e) in 2018 to address spoofing and caller ID manipulation and expressly covered both "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)–(B). It then defined "text message" in a manner that excludes real-time, two-way voice communications—i.e., a telephone call. *Id*. § 227(e)(8)(C).

Had Congress intended to include text messages within Section 227(c)'s private right of action, it could have done so then. That's exactly what several state legislatures have expressly amended their statutes to do because they recognized "telephone calls" do not include texts. *See* 2019 N.C. Sess. Laws 188 (H.B. 724) (amending N.C. Gen. Stat. § 75-101(9) to define "telephone solicitation" as a "voice *or text* communication") (emphasis added); Fla. Stat. § 501.059(1)(j) (2023) (amending "telephonic sales call" to include calls and texts); Tex. Bus. & Com. Code § 302.001 (as amended in 2025) (same). Congress did not do that, leaving Section 227(c) like the prior versions of these state statutes: inapplicable to text messages.

The statute's surrounding provisions reinforce the same conclusion. Congress did not use one catchall term throughout § 227; it chose different terms to reflect different kinds of communications. Section 227(a)(4), for example, defines

10

"telephone solicitation" broadly to include "the initiation of a telephone call *or message*," confirming that Congress knew how to extend the statute beyond calls when it wished to do so. 47 U.S.C. § 227(a)(4) (emphasis added).

Section 227(b) makes the same point through its operative provisions. In § 227(b)(1)(A), Congress prohibited making "any call" using specified technology to a range of numbers, including cellular telephones and paging services. That "any call" provision necessarily reaches non-voice communications, because pagers at the time received numeric or text messages, not voice calls. By contrast, § 227(b)(1)(B)—the very next paragraph in the same sub-section—prohibits "any *telephone call* to any residential *telephone line*" using an artificial or prerecorded voice—a formulation expressly tied to voice communications delivered over residential landlines, which did not receive text messages. 47 U.S.C. § 227(b)(1)(B) (emphasis added). Congress thus used the broader term "any call" plus a series of modifying phrases when addressing a broader set of communications (including messages), and the narrower term "telephone call" when addressing voice communications.

Congress also regulated fax advertising separately, prohibiting unsolicited advertisements sent to a "telephone facsimile machine," even though those transmissions occur over telephone lines. § 227(b)(1)(C).

11

This all further bolsters the point that "telephone call" only includes voice calls, not any communications sent over a telephone. And Section 227(c)(5)'s private right of action is limited to receipt of "more than one telephone call." That deliberate choice must be given effect. Because Plaintiff alleges only that she received text messages, not telephone calls, she cannot invoke § 227(c)(5), and her claims fail as a matter of law.

### ii.  Any FCC Ruling to the Contrary is Invalid

This conclusion is further compelled by *McLaughlin Chiropractic Assocs. v. McKesson*, which requires this Court to independently interpret and apply the plain text of the TCPA and not defer to FCC interpretations. 606 U.S. 146, 155 (2025). Before that decision, the FCC informally and cursorily opined that its regulations under Section 227(c) cover text messages, though it is unclear whether that was intentional, as that statement was made in passing and based on the FCC's more thorough analysis of the different language in Section 227(b), at least one sub-section of which does apply to some messages, as explained above at pages 10-11. *See* Targeting & Eliminating Unlawful Text Messages, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024) (treating texts as "calls" in passing); *Blackstone*, 792 F. Supp. 3d at 901 ("[T]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).").

Even assuming the FCC's aside was intentional, its opinion is irrelevant to this case, which is not a regulatory enforcement action but a private litigation initiated under the limited private cause of action under Section 227(c)(5). That matters because Congress granted the FCC authority under Section 227(b)(2) and (c)(2) to adopt implementing *regulations* and grant *exemptions* regarding "telephone solicitations," a term that includes both "telephone call[s]" and "messages," 47 U.S.C. § 227(a)(4). But Congress confined the private right of action it created in Section 227(c)(5) only to "telephone calls." What matters for this Motion is not whether Capital Vision violated the TCPA's regulations implemented by the FCC under Section 227(c) (it didn't), but whether Plaintiff has a private cause of action under Section 227(c)(5). She does not.

Nor is it odd that Congress hasn't extended the private right of action under § 227(c)(5) to texts. *See supra* § III.a.i. To start, it is unclear that Congress is even aware of this issue, given the provision at play went into effect almost 40 years ago. And assuming it is, Congress could "reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *CVS Pharmacy,* 797 F. Supp. 3d at 1274. And regulating callers "could serve the purpose of protecting consumers even if Congress created no private right of action at all." *Id.*

To this end, Congress frequently grants broader enforcement authority to agencies than the private causes of action it grants to the public. As a parallel example, the FTC's Telemarketing Sales Rule (which is analogous to the TCPA in many ways) sweeps broadly at the regulatory level but authorizes private suits only for a narrow band of conduct—"or practice"—where violations cause "actual damages of $50,000 or more" to the plaintiff. 15 U.S.C. § 6104(a). The CAN-SPAM Act is similar: Congress empowered the FTC, state attorneys general, and other public agencies to enforce the Act, while creating only a "limited private right of action" for a narrow subset of plaintiffs. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009) (citing 15 U.S.C. § 7706).

In any event, under the Supreme Court's 2025 and 2024 decisions in *McLaughlin* and *Loper Bright*, courts must apply the statute's plain meaning, not defer to contrary FCC interpretations of its own regulations, which use different language than the private cause of action at issue in this case. *See McLaughlin*, 606 U.S. at 155, 168–69; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388–89 (2024). Both in 1991 and today, the ordinary meaning of "telephone call" is a voice call, and the FCC cannot rewrite the TCPA to say otherwise.

For decades, lower courts often erroneously deferred to interpretations by agencies like the FCC, even when they were counterintuitive and changed from administration to administration. For example, most courts followed the FCC's

14

expansive view of "automatic telephone dialing system" (or "autodialer," for short). That ended when, as noted above, the Supreme Court unanimously reversed that definition—adopted by several circuit courts that followed the FCC's logic— holding it "must interpret what Congress wrote," and "outdated" as "perhaps the TCPA itself[] may be, that is no justification for eschewing the best reading." *Facebook*, 592 U.S. at 397, 409.

The few circuit court decisions on direct APA challenges to the FCC's TCPA interpretations—which was generally the only way to challenge an FCC interpretation before *McLaughlin*—are in accord. There, the circuit courts reversed far more thoughtful FCC opinions as contrary to the plain text of the TCPA. *See, e.g.*, *Ins. Mktg. Coal. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent.").

Now, through *McLaughlin*, the Supreme Court has confirmed that this Court must conduct that same analysis when raised defensively in litigation, a task formerly reserved for direct APA challenges. *McLaughlin*, 606 U.S. at 157–59

15

("[T]he default rule is that district courts in enforcement proceedings may conclude that an agency's interpretation of a statute is incorrect"). That is what the Fifth Circuit just recently did, when it made short order the FCC's interpretation of the TCPA's phrase "prior express consent." *Bradford v. Sovereign Pest Control of TX, Inc.*, 167 F.4th 809, at 812 (5th Cir. Feb. 25, 2026). In just three pages, the Fifth Circuit rejected the FCC interpretation of that term that has prevailed for the last 14 years, stating plainly that the TCPA means what it says: if a consumer has given "express consent" to be contacted, there is no TCPA claim. *Id*. The consent does not have to be in writing or contain magic language, as the FCC had maintained for one and a half decades. *Id.* at *2. Post *McLaughlin* and *Loper Bright*, it was that simple. *Id.* at *2–3.

Here, deferring to the FCC's "interpretation" and expanding Section 227(c)(5) to create liability for texts would go even further than the FCC's interpretation of "express consent." It would enlarge the private cause of action Congress created by replacing "telephone call[s]" with a broader category of communications—thus "reading into the TCPA something that is not there[.]" *Blackstone*, 792 F. Supp. 3d at 901. *McLaughlin* and *Loper Bright* forbid that result. *See id.*; *see also CVS Pharmacy,* 797 F. Supp. 3d at 1274 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose."); *Stockdale*, 2026 WL 591842, at *2 (explaining that, after *McLaughlin* and *Loper Bright*, the district court must

16

"independently—and without any special deference to an agency interpretation— determine the statute's meaning"). Whatever policy arguments might favor extending § 227(c)(5) to text messages, "it is for Congress to correct—not the courts." *Stockdale*, 2026 WL 591842, at *4. Section 227(c)(5) provides a private cause of action for "telephone call[s]," not text messages.

### iii. The Courts Reaching the Incorrect Conclusion Rely on the Wrong Statutory Term and/or Predate *McLaughlin*

As noted above, more than a dozen courts in the last year have ruled that text messages are not "telephone calls." *See, e.g.*, *supra* p. 3. Those courts follow the correct statutory analysis of the terms at issue. *See, e.g.*, *Stockdale,* 2026 WL 591842 at *2; *James*, --- F. Supp. 3d ---, 2026 WL 879244 at *1. The courts reaching the opposite conclusion, on the other hand, almost uniformly do one of two things: they rely on broad definitions of "call" rather than the statutory phrase actually at issue here—"telephone call"—and/or they predate *McLaughlin* and thus do not apply the Supreme Court's instruction that courts must independently determine the statute's meaning. *See id.* (explaining the same). As explained above, both approaches are error. The question under Section 227(c)(5) is the meaning of "telephone call" not "call" in the abstract, and that phrase does not encompass text messages.

## IV.   CONCLUSION

For these reasons, the Court should grant Capital Vision's motion to dismiss and dismiss the Complaint with prejudice.

DATED: April 22, 2026

/s/ Ryan D. Watstein
Ryan D. Watstein
James M. Ruley
WATSTEIN TEREPKA, LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
(404) 782-0695
ryan@wtlaw.com
jruley@wtlaw.com

Max A. Aidenbaum (P78793)
DICKINSON WRIGHT PLLC
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3093
maidenbaum@dickinsonwright.com

*Counsel for Defendant*

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of Court using the CM/ECF system, which will send notice of the electronic filing to all counsel of record.

By: /s/ *Ryan D. Watstein*
Ryan D. Watstein